IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TED BELL,** *et al.*, <br><br>           **Plaintiffs,** <br><br>           v. <br><br>**DEAN MARTINEZ, Secretary of the Illinois Department of Financial and Professional Regulation, In His Official Capacity,** <br><br>           **Defendant.** | Case No. 06 C 5809 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ted Bell, William Berry, Dorian Cartwright, and Rafael Rojas III (hereinafter, collectively, the "Plaintiffs") seek to enjoin Defendant Dean Martinez (hereinafter, "Defendant") under 42 U.S.C. § 1983 from enforcing Illinois' Predatory Lending Database Pilot Program, 765 ILCS 77/70 *et seq*. Before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons that follow, Defendant's Motion is **granted**.

### I. BACKGROUND

The Predatory Lending Database Pilot Program (hereinafter, "the Act") represents the Illinois Legislature's attempt to address a perceived problem with predatory lending in the home mortgage industry. The Act tasks the Illinois Department of Financial and

Professional Regulation ("the Department") with identifying zip codes within Cook County, Illinois, that have a high rate of residential home mortgage foreclosures owing to predatory lending practices. The Act then requires mortgage brokers and originators entertaining residential mortgage applications in those zip codes to submit certain information regarding proposed loans to a "Predatory Lending Database" ("PLD") established by the Department. This information includes the prospective borrower's name, address, social security number, date of birth, and income and expense information, as well as the amount and terms of the loan, a description of the collateral, information about the originator, any fees being charged, real estate taxes on the property, and the identity of others involved in the transaction. The Act prohibits outside disclosure of the information in the PLD, except to the borrower's credit counselor or to law enforcement where there is evidence of criminal activity or fraud.

Upon receiving this information, the Department is to review the information, compare it to credit counseling standards developed by the Department, and determine whether to mandate credit counseling. If this review results in counseling, the counselor recommends whether the loan should be approved, whether it believes the borrower cannot afford the loan or does not understand its terms, and whether the loan appears to be fraudulent.

Pursuant to the Act's mandate, the Department has identified ten zip codes on Chicago's southwest side in which to implement the above-described regime. The majority of the residents of these zip codes are either African-American or Hispanic-American.

## II. DISCUSSION

The Complaint asserts three grounds for injunctive relief. First, it alleges violations of the Fourteenth Amendment's Equal Protection Clause based on the Department's exclusive enforcement of the Act in areas inhabited primarily by racial and ethnic minorities and based on the Act's exclusion of federal lending institutions from its requirements. Second, it alleges violations of the Due Process Clause based on the Act's information disclosure requirements and based on the Act's overall effect on the availability of home loans. And third, it alleges violations of the Fourth Amendment's prohibition against unreasonable searches and seizures insofar as the Act allows law enforcement to search the information collected in the PLD. Defendant contends that none of the above allegations states a claim on which relief may be granted.

Before addressing the above arguments, however, the Court wishes to note two preliminary matters. First, Plaintiffs have asked the Court to rule on the Motion to Dismiss without the benefit of any briefing by Plaintiffs. Consequently, the Court's ruling rests entirely on the Complaint, as well as on the Motion to

Dismiss and supporting memorandum. Second, there is reason to believe that this case may be at least partially moot. Evidence both in and out of the record indicates that the Department is in the process of amending significant aspects of the relevant regulations and plans now to apply the pilot program to the entirety of Cook County, not just the 10 zip codes it previously identified. Seventh Circuit precedent suggests that such an action by the Department would moot those aspects of the Complaint affected by the new regulations. *See, e.g.*, *Burbank v. Twomey*, 520 F.2d 744, 747-749 (7th Cir. 1975) (finding mootness where voluntary cessation of challenge conduct was codified in a "formal, published administrative regulation"). But because the parties have asked the Court to rule on Defendant's motion nonetheless, and because it is not clear whether mootness in these circumstances would constitute a jurisdictional problem or would merely implicate prudential concerns, the Court will indeed rule on the motion.

### A. Equal Protection

To state an equal protection claim, Plaintiffs must allege purposeful discrimination. *Washington v. Davis*, 426 U.S. 229, 239 (1976). Ordinarily, state action that discriminates amongst classes of people will be upheld if it merely bears a rational relationship to a legitimate government interest; actions that discriminate against certain protected classes, including race and

ethnicity, however, trigger a heightened level of review by courts. *Plyler v. Doe*, 457 U.S. 202, 216-218 (1982)

Plaintiffs do not allege purposeful discrimination against any protected class. Instead, they allege that "[t]he affect *[sic]* of the Act is a state sanctioning of redlining [the denial of credit to an area's residents due to the income, race, or ethnicity of that area] in the ten zip codes affected by the [PLD]," and that "[m]ost residents in these ten zip codes are African-American[] or Hispanic-American." But while evidence that state action disproportionately affects members of a protected class is relevant under equal protection doctrine, it cannot, standing alone, trigger heightened scrutiny. *Washington*, 426 U.S. at 242. Plaintiffs' other allegations – that the Act is facially discriminatory because it only applies to residents of certain zip codes and only applies to state chartered lending institutions – do not involve protected classes and thus likewise do not trigger heightened scrutiny.

Having thus determined that rational basis review is the appropriate level of scrutiny, the Court is convinced the Act passes constitutional muster. The Act's goals of curbing predatory lending, preventing excessive mortgage foreclosures, and deterring unlawful, fraudulent, or criminal practices are all legitimate public purposes. And it is hard to see how the Act's provisions for designating high-foreclosure areas for greater oversight,

credit counseling, and information gathering are not rationally related to these purposes. It does not matter that the Department could have selected other zip codes in addition to or instead of the ones it did select. Nor does the Act's inapplicability to federal lending institutions render the Act irrational – such institutions are exclusively governed by federal, not state, law.

## B. Due Process

To make their due process claim, Plaintiffs must show that the Act either "infringes a fundamental liberty interest or [ ] is 'arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Greater Chicago Combine and Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1071 (7th Cir. 2005)(citation omitted). As explained in the preceding section, the Act bears a rational relation to protection of the public welfare from predatory lending, so in order to state their due process claim Plaintiffs must allege infringement of a fundamental right. Plaintiffs allege that the Act's information disclosure requirements and its adverse effect on the availability of home mortgages establish such infringement. But because "the adjective 'fundamental' in this setting is reserved for deeply-rooted, sacrosanct rights such 'the right of a man and woman to marry, and to bear and raise their children,'" *id.*, this Court concludes that Plaintiffs have not alleged a violation of any fundamental right. No authority supports the proposition that

access to competitively priced home mortgages is a deeply-rooted, sacrosanct right. And the Supreme Court has specifically upheld the disclosure of private information into a non-public government database. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 600-602 (1977) (holding that program requiring disclosure of medical information to a government database did not violate right to privacy).

## C. The Fourth Amendment

Plaintiffs' Fourth Amendment challenge fails both procedurally and substantively. First, it is fundamental that a plaintiff must show that he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983)(citations omitted). The Complaint alleges only that Plaintiffs are residents, property owners, and real estate or mortgage brokers either living in or doing business in the affected zip codes. It does not allege any likelihood that law enforcement is likely to search Plaintiffs' information in the PLD. This Court cannot assume that the mere probability that Plaintiffs will engage in real estate transactions in Department-designated zip codes means that their information will lead authorities to suspect crime or fraud and consequently search that information. *Compare with California Bankers Ass'n. v. Schultz*, 416 U.S. 21, 68 (1974)

(holding that the mere fact that plaintiffs were bank depositors did not give them standing to claim that bank information-reporting regulations violated the Fourth Amendment).

Even if Plaintiffs did have standing, the Supreme Court has upheld information reporting requirements like those here as reasonable under Fourth Amendment doctrine. *See id.* at 66-67 (finding that bank reporting requirements did not violate Fourth Amendment because, *inter alia*, banks were not strangers to, and earned income from, the affected transactions). What is more, the Act by its own terms limits law enforcement's access to the PLD information to circumstances in which there is reason to suspect crime or fraud. The reasonableness of a search conducted in accordance with the Act is thus built into the statute.

### III. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss is granted. The Complaint is hereby **dismissed.**

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　United States District Court

**DATE:** May 24, 2007